2022 IL App (1st) 210979-U

No. 1-21-0979

Order filed December 30, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MTDB CORPORATION D/B/A STRIKER LANES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 5257 |
| | ) | |
| AMERICAN AUTO INSURANCE COMPANY, | ) | Honorable |
| | ) | Raymond W. Mitchell, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court's dismissal of plaintiff's complaint with prejudice was not error where plaintiff's complaint failed to establish that the COVID-19 virus caused a direct physical loss of or damage to its property that would trigger coverage.

¶ 2    Plaintiff MTDB Corporation d/b/a Striker Lanes (MTDB) brought a declaratory judgment action against defendant, American Auto Insurance Company (AAIC), seeking a declaration that AAIC owed it coverage for alleged business losses and property damage due to the COVID-19 pandemic. The circuit court subsequently granted AAIC's section 2-615 (735 ILCS 5/2-615 (West

2020)) motion to dismiss MTDB's complaint with prejudice and MTDB has appealed. On appeal, MTDB contends that the circuit court erred by: (1) interpreting "direct physical loss or damage" to mean only losses resulting from physical alteration of MTDB's property; (2) deciding that MTDB's allegations that COVID-19 infested the surfaces and air of its property did not constitute physical alteration of the property; and (3) rejecting MTDB"s allegations that the presence of COVID-19 on others' property was sufficient to trigger the civil authority coverage of the policy. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4     Briefly stated, MTDB filed a declaratory judgment action seeking a declaration that AAIC owed it coverage under its commercial business insurance policy for losses incurred as a result of government closure of its business due to the COVID-19 pandemic during the relevant policy period. Specifically, MTDB sought coverage under the property coverage and the civil authority endorsement provisions of the policy.

¶ 5     The policy at issue provided property, general liability, and automobile coverages for the policy period of August 19, 2019, to August 19, 20202. The relevant portions of the policy for purposes of the case at bar concern the property coverage, which is comprised of the property declarations, the building and personal property coverage form, the commercial property conditions, the causes of loss form, the business income coverage form (and extra expense) and a number of endorsements. Section A of the building and personal property coverage form states that AAIC "will pay for direct physical loss of or damage to covered property at the location described in the declarations caused by or resulting from any covered cause of loss." Section A of the business income coverage form states that:

"[w]e will pay for the actual loss of business income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss."

¶ 6     The policy also included coverage for "extra expense," defined as necessary expenses you incur during the period of restoration that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." The policy defines the period of restoration as:

"the period of time that: [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality. Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants. * * *"

¶ 7     Section A.3.b. of the Business Income Coverage Form (and Extra Expense) provides up to four weeks of Civil Authority Coverage, as follows:

"[w]e will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will begin from the date of the action of Civil Authority and will apply for the number of consecutive weeks shown in the Schedule of this Endorsement."

¶ 8     The policy designated the covered premises as 6728 16th Street in Berwyn, Illinois. The policy further defined "Covered Cause of Loss" under the Personal Property Coverage Form and the Business Income Coverage Form as the "Basic Causes of Loss" enumerated under Section A of the Causes of Loss Form and "Risks of Direct Physical Loss not covered by the Basic Causes of Loss unless loss is excluded or limited" as stated under the Special Causes of Loss. Operations was defined as "[y]our business activities occurring at the described premises."

¶ 9     In response to MTDB's declaratory judgment complaint, AAIC filed a section 2-615 (735 ILCS 5/2-615 (West 2020)) motion to dismiss MTDB's complaint with prejudice. In support of its motion, AAIC indicated that it denied coverage under the policy because MTDB did not suffer direct physical loss or damage to its property as a result of the COVID-19 virus, and further that the government closure of MTDB's business did not trigger coverage under the civil authority endorsement.

¶ 10    The circuit court granted AAIC's motion to dismiss the complaint in a written order on July 16, 2021, finding that, based on the allegations in the complaint, MTDB was required to suspend or significantly reduce its business operations because of executive orders and that the losses sustained by MTDB were economic and not due to permanent loss of or physical alteration

to property. The circuit court relied on the supreme court's decision in *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278 (2001) in holding that the plain and ordinary meaning of "physical injury" is damage to tangible property that causes an alteration in appearance, shape, color, or other material dimension, and that MTDB had not alleged that the probable presence of COVID-19 in, on, or around their property caused any alteration in their property's appearance or any other material dimension. The circuit court also noted that neither the presence of COVID-19 on MTDB's property or the temporary closure of the business due to the Illinois executive orders have permanently dispossessed MTDB of their property, nor did the presence of COVID-19 cause an alteration in appearance, shape, color, or any other material dimension in MTDB's property. Because there was no direct physical loss or damage, the circuit court concluded that MTDB failed to allege facts that would give them coverage under the insurance policy.

¶ 11     The circuit court also found that civil authority coverage did not apply to MTDB based on the facts they alleged because COVID-19 particles could not cause direct physical loss or damage to property. MTDB's complaint was dismissed with prejudice and this timely appeal followed.

¶ 12                                    ANALYSIS

¶ 13     On appeal, MTDB contends that the circuit court erred in granting AAIC's motion to dismiss by: (1) interpreting "direct physical loss or damage" to mean only losses resulting from physical alteration of MTDB's property; (2) deciding that MTDB's allegations that COVID-19 infested the surfaces and air of its property did not constitute physical alteration of the property; and (3) rejecting MTDB''s allegations that the presence of COVID-19 on others' property was sufficient to trigger the civil authority coverage of the policy.

¶ 14     A section 2-615 motion to dismiss challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000). A motion to dismiss based on section 2-615 admits all well-pleaded facts and attacks the legal sufficiency of the complaint. *Id.* In ruling on a section 2-615 motion to dismiss, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009).  The court must accept as true all well-pled facts in the complaint and all reasonable inferences that can be drawn therefrom. *Neppl*, 316 Ill. App. 3d at 584. Our standard of review on a motion to dismiss is *de novo*. *Id.*

¶ 15     When an insured sues its insurer over a denial of coverage, the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss falls within the terms of his policy. *St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Insurance Co.*, 146 Ill. App. 3d 107, 109 (1986).  An insurance policy is a contract, and the general rules governing the interpretation of contracts also governs the interpretation of insurance policies. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 24. If the policy language is unambiguous, the policy will be applied as written unless it contravenes public policy. *Id.* The court's primary objective in interpreting an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2020 IL App (1st) 191834, ¶ 26. Whether an ambiguity exists in an insurance policy turns on whether the policy language is subject to more than one reasonable interpretation. *Id.*  Although "creative possibilities" may be suggested, only reasonable interpretations will be considered. *Id.* Thus, we will not strain to find an ambiguity where one does

not exist. *Id.* Just because a term is undefined by the policy does not render it ambiguous. *State Farm Mutual Auto Insurance Co. v. Rodriguez*, 2013 IL App (1st) 121388, ¶ 18. Where a term in an insurance policy is not defined, we give that term its plain, ordinary, and popular meaning. *Id.* ¶ 19. An insurance policy must not be interpreted in a manner that renders contract provisions meaningless. *Id.* ¶ 22.

¶ 16    Subsequent to the briefs being filed in this appeal, this court granted AAIC's motion to provide supplemental authority with recent case law addressing the issues raised on this appeal, which it did by citation to cases from this court as well as federal cases applying Illinois law. Most relevant to this appeal, the issues raised by MTDB have been previously considered by this court in two recent cases since its briefs were filed, namely *ABW Development LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930 on March 30, 2022, and *Firebirds International LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558 on May 20, 2022.

¶ 17    In *ABW*, the insured owner and operator of medical imaging clinics brought action against its businessowner insurer, seeking to recover losses it allegedly suffered due to the COVID-19 pandemic and due to governmental orders issued in response. *ABW*, 2022 IL App (1st) 210930, ¶ 1. After the insurer denied coverage, *ABW* sought a declaratory judgment that the losses were covered by its policy and that it was entitled to recover them. *Id.* The circuit court dismissed plaintiff's complaint, *concluding* that the unambiguous terms of the policy did not cover plaintiff's alleged losses. *Id.* Similar to the case at bar, the policy contained a "Businessowners Special Property Coverage Form," whereby the insurer agreed to "pay for direct physical loss of or damage to Covered Property at the premises * * * caused by or resulting from a Covered Cause of Loss." *Id*. ¶ 3. A "Covered Cause of Loss" was defined as "Risks of Direct Physical Loss," unless an

exclusion or limitation applied. *Id.* The policy also contained a "Business Income and Extra Expense" endorsement which covered loss of income due to the necessary suspension of operations, as well as a Civil Authority endorsement which extended the business income and extra expense coverage to apply to the actual loss of business income to apply to the actual loss of business income sustained and reasonable and necessary extra expense incurred caused by action of civil authority that prohibited access to the premises due to direct physical loss of or damage to property. *Id.* ¶¶ 4, 8.

¶ 18       *ABW*'s declaratory judgment action raised similar arguments to those raised by MTDB in the case at bar; namely that: (1) it was forced to suspend much of its business activities due to the COVID-19 crisis and the ensuing orders of civil authorities; (2) it was likely that SARS-CoV-2, the virus that causes COVID-19 had been physically present at *ABW*'s premises during the policy period and that it sustained direct physical loss and damage to items of property and to its premises as a result of the presence of the virus and the COVID-19 crisis; (3) the presence of any particles from the COVID-19 virus rendered the premises and items of physical property unsafe, impaired their value, usefulness and normal function, causing direct physical loss and damage to its property; (4) and its operations were suspended due to the physical loss and damage to its property and the premises due to the orders issued by civil authorities, thereby causing an actual loss of income. *Id.* ¶ 10. The insurer responded with a section 2-615 motion to dismiss, contending that (1) plaintiff had not alleged and could not allege any direct physical loss of or damage to its property, (2) our supreme court had held that physical injury to property required that a property be altered in appearance, shape, color, or other material dimension and (3) ABW had not alleged that the COVID-19 virus was even found at the covered properties. *Id.* ¶ 13. The insurer further

argued that even if ABW had adequately alleged the presence of the virus, the virus did not physically alter the appearance, shape, color, structure, or other material dimension of the property where the virus dies naturally on surfaces within hours or days or can be killed or removed with disinfectants or routine cleaning, and that ABW's allegations asserted only economic loss from its inability to use its premises and not any direct physical loss of or damage to property, and such loss of use was excluded from the policy. *Id*.

¶ 19    The trial court agreed with the insurer and granted its motion to dismiss with prejudice. *Id.* ¶ 20. On appeal, this court first considered the question of whether ABW's alleged losses could constitute direct physical loss of or damage to its property, noting that while our supreme court has not specifically addressed the issue of whether damage from the possible or actual presence of the COVID-19 virus constitutes direct physical loss of damage to property, it has interpreted the term physical in an insurance policy to mean of or relating to natural or material things as opposed to things mental, moral, spiritual or imaginary as defined by Webster's Dictionary. *Id.* ¶ 29 (citing *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 301 (2001)). In relying on *Eljer*, this court concluded that the policy unambiguously required that the covered loss or damage be physical in nature, meaning the property has been altered in appearance, shape, color, or other material dimension. *Id.* ¶ 30. In determining that plaintiff had not met that requirement, this court noted that the complaint did not allege any facts to support its conclusion that the COVID-19 virus caused damage to its property; instead, the complaint only alleged that its presence was "likely," which did not constitute physical loss of or damage to property because COVID-19 does not physically alter the appearance, shape, color, structure, or other material dimension of the property. *Id.* ¶ 35. Additionally, with respect to the claim of coverage under the civil authority endorsement,

this court found that the trigger for coverage was direct physical loss or damage to property, which the complaint failed to establish. *Id*. ¶ 39. Accordingly, this court affirmed the dismissal of ABW's complaint with prejudice. *Id.* ¶ 42.

¶ 20    Similarly in *Firebirds*, this court considered the denial of the plaintiff's claims for property damage and business losses due to the COVID-19 pandemic and affirmed the denial of coverage. *Firebirds*, 2022 IL App (1st) 210558, ¶ 1. As in ABW, Firebirds submitted a claim to its insurer, seeking coverage for the significant losses incurred by their restaurants because their policies insured against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property. *Id.* ¶¶ 7, 8. The insurer denied Firebirds claim because the COVID-19 virus did not constitute a direct physical loss or damage to property. *Id.* ¶ 8. The trial court granted the insurer's motion to dismiss the complaint and this court affirmed on appeal, finding that Firebirds' allegation of business interruption losses due to the presence of the COVID-19 virus in their properties was excluded from coverage. *Id.* ¶¶ 13, 29. This court noted that the polices at issue provided coverage only when there was a direct physical loss or damage to covered property, but found that our supreme court made clear in *Eljer* that "diminution in value of a whole, resulting from the failure of a component to perform as promised, does not constitute a physical injury," and fell outside of coverage for physical loss or damage to property. *Id.* ¶ 40 (quoting *Eljer*, 197 Ill. 2d at 312).

¶ 21    We find that *ABW* and *Firebirds* are dispositive of the issues raised on this appeal as described below. As we concluded in those cases, according to our supreme court's determination in *Eljer* which defined "physical" for purposes of interpreting direct physical loss or damage for insurance coverage, there must be an actual alteration to the appearance, shape, color, or other physical aspect of the property in order for there to be coverage under the policy. We therefore

reject MTDB's claim that *Eljer* stands for the opposite conclusion. Our supreme court was quite clear that under its plain and ordinary meaning, "physical" meant just that- pertaining to natural or material things. *ABW*, 2022 IL App (1st) 210930, ¶ 29 (citing *Eljer*, 197 Ill. 2d at 301). Accordingly, the circuit court did not err in reaching that conclusion.

¶ 22    We also reject MTDB's alternate contention that the COVID-19 virus caused direct physical loss or damage to its property by infecting surfaces and air of its property, thereby triggering coverage under the policy. First, MTDB's complaint, like those at issue in *ABW Firebirds*, alleged only that it was "likely" that the COVID-19 virus was present on its property and therefore infected the surfaces and air of the property, not that it was actually present on its property. We find that such allegation in the complaint did not sufficiently allege facts to show how the COVID-19 virus caused direct physical loss or damage to its property. As we concluded in both *ABW* and *Firebirds*, the COVID-19 virus does not alter the appearance, shape, color, or other physical aspect of the property to trigger coverage under the policies at issue. While we certainly agree with MTDB that the COVID-19 virus is comprised of particles in the air that can alight onto surfaces and remain active for hours or days after such contact, we do not find this contact to rise to the level of a physical or structural alteration of the property. Such contamination by the COVID-19 virus can be remedied by routine cleaning or disinfecting of surfaces and the air, all without altering the appearance, shape, color, or other material aspect of the property. Accordingly, we conclude, as was concluded in *ABW* and *Firebirds*, that COVID-19 could not constitute a physical alteration of the property so as to trigger coverage under the policy.

¶ 23    MTDB also contends that the circuit court erred in rejecting its allegations that the presence of the COVID-19 virus on others' property was sufficient to trigger the civil authority coverage of

the policy. However, MTDB's brief fails to make any argument in support of this contention, nor does it cite to any supporting caselaw. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant's brief to contain argument supported by citations of the authorities and the pages of the record relied on. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19. A failure to cite relevant authority violates Rule 341and can cause a party to forfeit consideration of the issue. *Id.* Where an appellant has failed to support his or her argument with citations to authority, this court will not research the issue on appellant's behalf. *Id.* Because MTDB has failed to make any argument on this issue in its brief or cite relevant authority, this argument is forfeited.

¶ 24    For the foregoing reasons, the judgment of the circuit court of Cook County granting AAIC's section 2-615 (735 ILCS 5/2-615 (West 2020)) motion to dismiss with prejudice is affirmed.

¶ 25    Affirmed.