**2021 IL 125978**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125978)

WEST BEND MUTUAL INSURANCE COMPANY, Appellant, v. KRISHNA SCHAUMBURG TAN, INC., *et al.*, Appellees.

*Opinion filed May 20, 2021.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1    Klaudia Sekura filed a class-action lawsuit against Krishna Schaumburg Tan, Inc. (Krishna), a tanning salon and franchisee of L.A. Tan, and alleged that Krishna (1) violated the Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2018)) provisions relating to the collection of biometric identifiers and

biometric information when it scanned Sekura's and its other customers'[1] fingerprints and (2) violated the Act's provisions relating to the disclosure of biometric identifiers and information[2] when it disclosed biometric information containing her fingerprints "to an out-of-state third party vendor, SunLync." Krishna tendered Sekura's lawsuit to West Bend Mutual Insurance Company (West Bend), its insurer, and requested a defense. West Bend filed a declaratory judgment action against Krishna and Sekura contending that it did not owe a duty to defend Krishna against Sekura's lawsuit. When West Bend and Krishna filed cross-motions for summary judgment, Sekura joined Krishna's motion for summary judgment but sought alternative relief. The trial court entered a judgment for Krishna. West Bend appealed, and the appellate court affirmed the trial court's decision. 2020 IL App (1st) 191834. We allowed West Bend's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2019)) and affirm entry of summary judgment for Krishna.

¶ 2                                    I. BACKGROUND

¶ 3                              A. The Underlying Complaint

¶ 4        Sekura purchased a membership from Krishna that gave her access to L.A. Tan's tanning salons. Sekura's membership required Sekura to provide Krishna with her fingerprints. Sekura filed a three-count class-action lawsuit against Krishna and alleged in count I that Krishna violated the Act as follows:

> "Krishna Tan systematically and automatically collected, used, stored, and disclosed their [customers'] biometric identifiers or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

---

[1]In this opinion whenever we refer to Sekura, we are also referring to Krishna's other customers who are class members and use their memberships at L.A. Tan's locations.

[2]The Act defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" as "any information *** based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10 (West 2018). The Act regulates the collection, retention, disclosure, and destruction of biometric identifiers and information. See Charles N. Insler, *Understanding the Biometric Information Privacy Act Litigation Explosion*, 106 Ill. B.J. 34, 35-36 (2018).

Specifically, Krishna Tan systematically disclosed Plaintiff's and the Class's biometric identifiers and biometric information to SunLync, an out-of-state *** vendor.

\* \* \*

Krishna Tan does not provide a publicly available retention schedule or guidelines for permanently destroying its customers' biometric identifiers and biometric information as specified by the [Act]."

¶ 5      In count II, Sekura alleged that Krishna was unjustly enriched because Krishna failed to comply with the Act and that Krishna should not be allowed to retain the money Sekura paid to Krishna. In count III, Sekura alleged that Krishna was negligent when it breached its duty of reasonable care by violating the Act. Sekura's prayer for relief sought "statutory damages of $1,000 for each of Krishna Tan's violations of the Act pursuant to 740 ILCS 14/20(1) (West 2020)."

¶ 6                                B. West Bend's Policies

¶ 7      West Bend issued two businessowners' liability policies to Krishna. The policies cover the period from December 1, 2014, through December 1, 2015, and December 1, 2015, through December 1, 2016. West Bend's insurance policies state, in pertinent part, as follows:

"1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage', 'personal injury', or 'advertising injury'' to which this insurance does not apply.

\* \* \*

b. This insurance applies:

- 3 -

(1) To 'bodily injury' and 'property damage' only if:

(a) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

(b) The 'bodily injury' or 'property damage' occurs during the policy period.

(2) To:

(a) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(b) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services[.]"

¶ 8        The policies contain the following pertinent definitions:

"F. Liability And Medical Expenses Definitions

1. 'Advertising injury' means injury arising out of one or more of the following offenses:

***

b. Oral or written publication of material that violates a person's right of privacy;

* * *

3. 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. 'Personal injury' means injury, other than 'bodily injury', arising out of one or more of the following offenses:

\* \* \*

e. Oral or written publication of material that violates a person's right of privacy."

The policies contain the following pertinent exclusions:

"B. Exclusions

1. Applicable To Business Liability Coverage

This insurance does not apply to:

\* \* \*

p. Personal Or Advertising Injury

'Personal injury' or 'advertising injury':

\* \* \*

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

¶ 9        An endorsement to the policies added the following exclusion:

"This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA) [(47 U.S.C. § 227 (2018))], including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003 [(15 U.S.C. § 7701 (Supp. III 2004))], including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

¶ 10    The 2015 policy also included an endorsement adding coverage for costs from a data compromise of the insured. However, the data compromise endorsement was not considered by the appellate court but was raised in Krishna's brief in this appeal.

¶ 11    West Bend advised Krishna in a letter that it would provide a defense under a reservation of rights because it believed that Sekura's lawsuit against Krishna was not covered by the policies. Therefore, West Bend maintained that it did not have a duty to defend Krishna against Sekura's lawsuit.

¶ 12              C. West Bend's Declaratory Judgment Action

¶ 13    West Bend filed a declaratory judgment action and alleged that Sekura's complaint against Krishna does not come within the policies' coverage for personal injury or advertising injury. First, the declaratory judgment action alleged that Sekura's complaint does not come within the policies' coverage for "personal injury" or "advertising injury" because the complaint does not allege a publication of material that violates a person's right of privacy. Second, the declaratory judgment action alleged, in the alternative, that the policies' violations of statutes exclusion applies and bars West Bend from having to provide coverage to Krishna

for Sekura's lawsuit.

¶ 14                                 D. Krishna's Countercomplaint in
                                  the Declaratory Judgment Action

¶ 15        Krishna filed a countercomplaint in the declaratory judgment action and alleged
in count I that the Sekura lawsuit falls within or potentially within West Bend's
policies' coverage. In count II, which asserted statutory bad faith and vexatious and
unreasonable conduct, Krishna alleged that "West Bend's stated defenses that there
is no allegation of a 'personal injury' and that the Data Compromise endorsement
does not apply has no good faith basis in fact or in law."

¶ 16                              E. Cross-Motions for Summary Judgment

¶ 17                           1. West Bend's Motion for Summary Judgment

¶ 18        West Bend filed a motion for summary judgment and maintained that coverage
for an alleged personal injury or advertising injury was not triggered because "the
complaint does not allege a 'publication' as that term is defined under Illinois law."
In support of its position, West Bend cited *Valley Forge Insurance Co. v. Swiderski
Electronics, Inc.*, 223 Ill. 2d 352 (2006). West Bend's motion maintained that in
*Valley Forge* this court held that "publication" means communication to the public
at large. West Bend argued that disclosure to a single party cannot be considered a
publication as the term is defined in *Valley Forge* and, because there was no
publication of material to more than one party that violated Sekura's right of
privacy, the personal injury and advertising injury coverages are inapplicable. In
the alternative, West Bend's motion maintained that the policies' violation of
statutes exclusion applies and bars coverage to Krishna for the Sekura lawsuit
because Sekura's allegations clearly fall within the violation of statutes exclusion.

¶ 19                          2. Krishna's Cross-Motion for Summary Judgment

¶ 20        Krishna's cross-motion for summary judgment maintained that the allegations
in Sekura's complaint that Krishna shared her biometric identifiers and biometric
information with a single party, SunLync, is a publication that is covered by the

- 7 -

policies. Krishna also cited *Valley Forge* in support of its position. Krishna's cross-motion further maintained that, regardless of whether the violation of statutes exclusion applies to Sekura's complaint, West Bend's policies provide coverage for a violation of the Act under the Illinois data compromise coverage endorsement.

¶ 21                           3. Sekura's Response to West Bend's
Motion for Summary Judgment

¶ 22    Sekura joined Krishna's cross-motion for summary judgment and maintained in her response that the exclusion for violation of statutes does not apply because the exclusion only applies to statutes that regulate methods of communication. Sekura, however, requested different relief: (1) that the court deny West Bend's motion for summary judgment without prejudice and (2) that the court stay the declaratory judgment lawsuit pending the resolution of the underlying claim.

¶ 23                           F. The Trial Court's Decision

¶ 24    The trial court found that the plain, ordinary, and popular meaning of "publication" "simply means the dissemination of information" and that the allegations in Sekura's complaint involving Krishna's sharing of Sekura's biometric identifiers and information with SunLync constitute a publication within the purview of West Bend's policies. The trial court also found that the exclusion for violation of statutes does not apply because the exclusion applies to statutes like the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2018)) and the CAN-SPAM Act of 2003 (CAN-SPAM Act) (15 U.S.C. § 7701 (2018)) that regulate methods of sending information and because the Act regulates the retention, collection, disclosure, and destruction of biometric identifiers and information.

¶ 25    The trial court held that West Bend owed a duty to defend Krishna against Sekura's lawsuit and entered a judgment for Krishna. But the trial court denied Krishna's cross-motion for summary judgment on count II for statutory bad faith and vexatious and unreasonable conduct by West Bend.

¶ 26                              G. The Appellate Court's Decision

¶ 27        The appellate court found that the common understandings and dictionary
definitions of publication clearly include *both* a limited sharing of information with
a single party and the broad sharing of information to multiple recipients that the
court viewed as a publication under *Valley Forge*. The appellate court held that the
allegations in Sekura's complaint fall within or potentially within West Bend's
policies and, therefore, West Bend has a duty to defend Krishna. 2020 IL App (1st)
191834, ¶ 38. The appellate court also held that the violation of statutes exclusion
does not bar coverage to Krishna because of the exclusion's title and because the
TCPA and CAN-SPAM Act are two statutes that are listed in the exclusion and
both regulate methods of communication. *Id.* ¶ 43. The appellate court further held
that the violation of statutes exclusion "applies to statutes that govern certain
methods of communication, *i.e.*, e-mails, faxes, and phone calls." (Emphasis
omitted.) *Id.* ¶ 42. Therefore, the appellate court affirmed the decision of the trial
court.


¶ 28                                      II. ANALYSIS

¶ 29                                  A. The Standard of Review

¶ 30        In this case the parties filed cross-motions for summary judgment (735 ILCS
5/2-1005 (West 2018)), and the trial court entered a judgment for Krishna and
Sekura. The filing of cross-motions for summary judgment constitutes an implicit
agreement between the parties that there are no genuine issues of material fact and
only a question of law is presented to the court. *Rushton v. Department of
Corrections*, 2019 IL 124552, ¶ 13. Where a judgment, like the judgment in this
case, grants summary judgment to a party, our review is *de novo*. *State Farm
Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 19. Also, where
this court must construe the terms of a contract or an insurance policy, as we must
do in this case, the court is presented with a second question of law, and our review
is *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399 (2010);
*State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co.*,
226 Ill. 2d 395, 400 (2007).

¶ 31                              B. Rules of Contract Construction

¶ 32            This court has prescribed general rules for construing a contract for insurance. *Sanders v. Illinois Union Insurance Co.*, 2019 IL 124565, ¶ 22. The primary function of the court in construing contracts for insurance is to ascertain and give effect to the parties' intent as expressed in the insurance contract's language. *Id.* ¶¶ 22-23 (citing *Valley Forge*, 223 Ill. 2d at 362). If the terms of the insurance contract are clear and unambiguous, the court will give them their plain and ordinary meaning. *Id.* ¶ 23; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991). Conversely, if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the contract. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992)). Where competing reasonable interpretations of an insurance contract exist, a court is not permitted to choose which interpretation it will follow; rather, in such circumstances, the court must construe the insurance contract in favor of the insured and against the insurer that drafted the contract. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 396 (2005).

¶ 33            In this declaratory judgment action, we must determine whether West Bend has a duty to defend Krishna. A duty to defend arises if the allegations in Sekura's complaint fall within or potentially within West Bend's policies' coverage for a personal injury or advertising injury. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193 (1976) (a duty to defend arises when the allegations in the underlying complaint allege facts within or potentially within the coverage of the policy). Krishna maintains that the allegations in Sekura's complaint come within the coverage of West Bend's policies. West Bend's declaratory judgment action and motion for summary judgment contend that Sekura's complaint does not come within its policies' coverage because the complaint does not allege the publication of material that violates a person's right of privacy. Accordingly, we must construe the terms in West Bend's policies to determine whether the allegations in Sekura's complaint allege that Krishna's acts caused Sekura a personal injury and whether Krishna's sharing of biometric identifiers and information was a publication of material that violated Sekura's right to privacy.

¶ 34     West Bend's policies define personal injury and advertising injury, but the policies do not define the terms publication or right to privacy. Therefore, in interpreting West Bend's policies, we must construe three terms in the policies and determine whether Sekura's complaint alleges (1) a "personal injury or advertising injury" within the purview of the policies, (2) a "publication" of material by Krishna that violated Sekura's right to privacy and comes within the purview of the policies, and (3) a publication of material by Krishna that violated Sekura's "right of privacy" and comes within the purview of the policies.

¶ 35                    1. Personal Injury or Advertising Injury

¶ 36     West Bend's policies define "personal injury" as an injury "other than a bodily injury" that arises out of an "oral or written publication of material that violates a person's right of privacy." West Bend's policies' definition of "advertising injury" is similar to the definition for personal injury but does not include the "other than a bodily injury" language. West Bend's policies define "bodily injury" as a "bodily injury, sickness or disease." Sekura's complaint does not allege she suffered a bodily injury, a sickness, or a disease when Krishna shared her biometric identifiers and biometric information with SunLync. But Sekura's complaint does allege that she suffered an injury, other than a bodily injury (emotional upset, mental anguish, and mental injury), when Krishna disclosed her biometric identifiers, fingerprints, and biometric information to a single party—SunLync—in violation of her right to privacy under the Act. While we find that Sekura's complaint does not allege a bodily injury but a potential nonbodily injury under West Bend's policies, we must next determine whether Krishna's sharing of Sekura's biometric identifiers and biometric information with SunLync was a "publication" that violated Sekura's right to privacy.

¶ 37                              2. Publication

¶ 38     West Bend's policies do not define the term publication. When a term is not defined in an insurance policy, we afford that term its plain, ordinary, and popular meaning, *i.e.*, we look to its dictionary definition. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010).

¶ 39    West Bend contends a "publication" refers to the communication or distribution of information to the public. West Bend relies primarily on the emphasized language in the following statement in *Valley Forge*: "Swiderski published the advertisements both in the general sense of communicating information *to the public* and in the sense of distributing copies of the advertisements *to the public*." (Emphases added.) *Valley Forge*, 223 Ill. 2d at 367. We note this statement in *Valley Forge* is *obiter dictum*. See *id.* (this court noted that plaintiffs had abandoned their argument that the conduct alleged in the underlying complaint did not constitute a publication, but this court would address the question "in the interest of coherently interpreting all the relevant terms of the 'advertising injury' provision"); see also *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009) (defining *obiter dictum* as "a remark or expression of opinion that *** is generally not binding authority or precedent" and stating that a particular passage or statement may be identifiable as *dictum* if " 'the passage was unnecessary to the outcome of the earlier case' " (quoting *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988))). Krishna and Sekura argue that a publication includes disclosures made to a single party, like SunLync, and adopt the definition for publication used by the appellate court. The appellate court found that the common understandings and dictionary definitions of "publication" clearly include *both* a limited sharing of information with a single party and the broad sharing of information to multiple recipients as the court stated in *Valley Forge*. 2020 IL App (1st) 191834, ¶ 35. To determine whether publication includes (1) the communication or distribution of information to a single party like SunLync, as advanced by Krishna and Sekura, or (2) refers only to the communication or distribution of information to the public at large, as advanced by West Bend, we examine the definition of publication in various dictionaries, treatises on insurance law and the law of privacy, and the Restatement of the Law of Torts.

¶ 40    First, we review dictionary definitions of the term "publication" and find that the term means both communication to a single party and communication to the public at large. See Oxford English Dictionary Online, www.oed.com/view/Entry/154060 (last visited May 12, 2021) [https://perma.cc/35H3-UF7N] (defining publication as "[t]he action of making something publicly known" and notification or communication to a party or to a limited number of people regarded as representative of the public); Webster's Third New International Dictionary 1836 (1993) (defining publication as "communication (as of news or information) to the

- 12 -

public" and "legal notification"); Black's Law Dictionary 1227-28 (6th ed. 1990) (defining publication as "to exhibit, display, disclose or reveal. [Citation.] The act of publishing anything *** or rendering it accessible to public scrutiny" and the "communication of libelous matter to a third person." "*Law of libel.* The act of making the defamatory matter known publicly, of disseminating it, or communicating it to one or more persons (*i.e.* to third person or persons).").

¶ 41   Second, we review insurance law and law of privacy treatises for their definitions of the term publication, and we find once again that publication means both communication to a single party and communication to the public at large. See Steven Plitt & Jordan Ross Plitt, 2 Practical Tools for Handling Insurance Cases, Personal injury and advertising injury coverage—Violations of a person's right to privacy § 13:37 (Sept. 2020 Update) (stating that " '[p]ublication' within the meaning of personal and advertising injury coverage relating to the publication of material that violated a person's right of privacy is not *limited* to the publication of material that wrongfully discloses private facts to third parties." (Emphasis added.)); M. Elizabeth Medaglia & Peter A. von Mehren, 1 Law and Practice of Insurance Coverage Litigation, Summary of issues—Prominent coverage issues § 7:4 (June 2020 Update) (stating that in one jurisdiction " '[p]ublication' is defined as 'making known,' for purposes of liability policy provision defining 'advertising injury' to include 'oral or written publication of material that violates a person's right of privacy.' " (quoting *State Farm General Insurance Co. v. JT's Frames, Inc.*, 104 Cal. Rptr. 3d 573, 587 (Ct. App. 2010) (finding "making known" meant disclosure of private content to another party))); (3) David A. Elder, Privacy Torts, Publication § 2:4 (Dec. 2020 Update) (defining publication to include "publicity" and "public disclosure" and stating that in some instances there must be evidence of receipt of the information by another party); see also 33A Ill. L. and Prac. *Slander and Libel* § 23, at 116 (Jan. 2021) ("Any act by which defamatory matter is communicated to someone other than the person defamed is a 'publication.' ").

¶ 42   Third, we review the Restatement (Second) of Torts and find, once again, that under the common law the term publication means both communication to a single party and communication to the public at large. See Restatement (Second) of Torts § 577 & cmt. b (1977) (defining publication for purposes of defamation as "communication intentionally or by a negligent act to one other than the person defamed" and stating that "[t]o constitute a publication it is necessary that the

- 13 -

defamatory matter be communicated to some one other than the person defamed," but "[i]t is not necessary that the defamatory matter be communicated to a large or even a substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed."); *id.* § 652D cmt. a, at 384 (defining publication for purposes of the publicity given to private life tort as when "the matter is made public, by communicating it to the public at large" and distinguishing it from " 'publication,' as that term is used in § 577 in connection with liability for defamation").

¶ 43     We find, based on our review of dictionaries, treatises, and the Restatement, that the term "publication" has at least two definitions and means both the communication of information to a single party and the communication of information to the public at large. If a term has multiple reasonable definitions or is subject to more than one reasonable interpretation within the context in which it appears, as in West Bend's policies, the term is ambiguous. See *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14 (holding that, if a term has multiple dictionary definitions, it is ambiguous). Therefore, because the term "publication" in West Bend's policies has more than one definition, the term is ambiguous and will be strictly construed against the insurer who drafted the policies. *Elmore*, 2020 IL 125441, ¶ 21; *Gillen*, 215 Ill. 2d at 393. Accordingly, we adopt the construction used by Krishna and the appellate court and construe the term publication in West Bend's policies to include a communication with a single party, like SunLync.

¶ 44                              3. Right of Privacy

¶ 45     Because West Bend's policy does not define the phrase "right of privacy," we again look to dictionary definitions. *Munoz*, 237 Ill. 2d at 436. Black's Law Dictionary defines "right of privacy" as the right to personal autonomy. Black's Law Dictionary 1586 (11th ed. 2019). Courts have recognized that the right to privacy includes two primary privacy interests: seclusion and secrecy. *Auto-Owners Insurance Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 549 (7th Cir. 2009). Courts define the right to secrecy as the right to keep certain information confidential. *Id.* (defining primary privacy interests). Courts define the right to seclusion as the right to be left alone and protecting a person from another's prying

into their physical boundaries or affairs. *Id.*; *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 416-17 (1989) (applying allegations in complaint to analysis of the right to seclusion).

¶ 46     We note that Sekura's complaint alleges that Krishna violated the Act by disclosing her biometric identifiers and information to SunLync. We also note that the Act codifies (1) an individual's right to privacy in their biometric identifiers— fingerprints, retina or iris scans, voiceprints, or scans of hand or face geometry— and (2) an individual's right to privacy in their biometric information—information based on an individual's biometric identifiers that is then used to identify an individual. See 740 ILCS 14/10 (West 2018); see also *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33 ("General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information"). We find that the Act protects a secrecy interest—here, the right of an individual to keep his or her personal identifying information like fingerprints secret. See 740 ILCS 14/15(d) (West 2018); *Meegan v. NFI Industries, Inc.*, No. 20 C 465, 2020 WL 3000281, at *3 (N.D. Ill. June 4, 2020) (applying section 13-201 of the Code of Civil Procedure (735 ILCS 5/13-201 (West 2018)) to "the dissemination of private information prohibited by [the Act]"). Under the Act, disclosing a person's biometric identifiers or information without their consent or knowledge necessarily violates that person's right to privacy in biometric information. *Dixon v. Washington & Jane Smith Community—Beverly*, No. 17 C 8033, 2018 WL 2445292, at *9 (N.D. Ill. May 31, 2018). Accordingly, we find that Sekura's assertion that Krishna shared her biometric identifiers and information with SunLync alleges a potential violation of Sekura's right to privacy within the purview of West Bend's policies.

¶ 47                              4. West Bend's Duty to Defend

¶ 48     Having construed the terms in West Bend's policies, we next determine whether the allegations in Sekura's complaint fall within or potentially within West Bend's policies' coverage for a personal injury or an advertising injury. See *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010) (declaratory judgment rules require us to determine whether the factual allegations in the underlying complaint

- 15 -

fall within or potentially within the insurance policies' coverage); see also *Koloms*, 177 Ill. 2d at 479.

¶ 49        First, we consider whether the allegations in Sekura's complaint potentially allege that there was a personal injury or an advertising injury. West Bend's policies define personal injury and advertising injury as an injury, other than bodily injury, arising out of an oral or written publication of material that violates a person's right of privacy. Sekura's complaint does not allege she suffered bodily injury, a sickness, or disease from Krishna's sharing her biometric identifiers and biometric information with SunLync. Sekura's complaint alleges "Sekura has suffered emotional upset, mental anguish, and mental injury" from Krishna's collecting and sharing her biometric identifiers and biometric information with SunLync. Therefore, the allegations in Sekura's complaint that Krishna shared her biometric identifiers and information with SunLync allege or potentially allege that Sekura suffered a personal injury that comes within the purview of West Bend's policies.

¶ 50        Second, we address whether the allegations in Sekura's complaint establish that there was a publication. A publication occurs when information is shared with a single party. See, *e.g.*, Oxford English Dictionary Online, www.oed.com/view/ Entry/154060 (last visited May 12, 2021) [https://perma.cc/35H3-UF7N]. Sekura alleges in her complaint that her biometric identifiers and information were shared with SunLync. Therefore, we find that the allegations in Sekura's complaint alleging that Krishna shared Sekura's biometric identifiers and information with SunLync fall within or potentially within the definition for the term publication in West Bend's policies.

¶ 51        Finally, we examine whether Sekura's complaint alleges a violation of her right to privacy. The Act codifies persons' right to privacy in their biometric identifiers and information. 740 ILCS 14/10 (West 2018); see also *Rosenbach*, 2019 IL 123186, ¶ 33. Sekura alleges in her complaint that her biometric identifiers and information were shared with SunLync in violation of the Act. Here, based on the aforementioned, we find that the allegations in Sekura's complaint that Krishna shared her biometric identifiers and information with SunLync fall within or potentially within the term "right of privacy" in West Bend's policies. Therefore, we hold the allegations in Sekura's complaint fall within or potentially within West Bend's policies' coverage for personal injury or advertising injury because

Sekura's complaint contained allegations that alleged Krishna shared biometric identifiers and information with SunLync, which was potentially a publication that violated Sekura's right to privacy. Accordingly, we hold West Bend has a duty to defend Krishna.

¶ 52                                C. The Violation of Statutes Exclusion
                                    Does Not Apply to Bar Coverage

¶ 53     Next, we consider whether the violation of statutes exclusion in West Bend's policies bars coverage to Krishna. West Bend maintains the exclusion bars coverage here because it applies to statutes that "prohibit the communicating of information" and the Act limits the communication of information. Krishna and Sekura rely on the title of the exclusion and argue that the "other than" language in the exclusion bars coverage only for violations of statutes that regulate methods of communication like telephone calls, faxes, and e-mails. Krishna maintains this court should rely on the doctrine of *ejusdem generis* when construing the term in the policies. West Bend argues that the doctrine of *ejusdem generis* does not apply and that the "other than" language in the exclusion means statutes "different from" the TCPA and the CAN-SPAM Act.

¶ 54     The appellate court found the violation of statutes exclusion is meant to bar coverage for the violation of "statutes that govern certain methods of communication, *i.e.*, e-mails, faxes, and phone calls." (Emphasis omitted.) 2020 IL App (1st) 191834, ¶ 42. The appellate court also found the exclusion is *not* meant to apply to "other statutes that limit the sending or sharing of certain information." *Id.* The appellate court relied on the exclusion's title and "the two specific statutes listed in the exclusion" that regulate methods of communication—the TCPA (regulating telephone calls and faxes) and the CAN-SPAM Act (regulating e-mails). *Id.* ¶ 43. The appellate court found that the violation of statutes exclusion does not apply to bar coverage to Krishna because the Act "says nothing about methods of communication." *Id.* ¶ 45.

¶ 55     The violation of statutes exclusion numbers the statutes that West Bend's policies do not apply to: (1) the TCPA, (2) the CAN-SPAM Act, and (3) statutes "other than" the TCPA or CAN-SPAM Act that prohibit or limit the communication of information. The TCPA regulates the use of certain *methods* of communication:

telephone calls and faxes. *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 847 F.3d 92, 99-100 (2d Cir. 2017) (Leval, J., concurring). The CAN-SPAM Act regulates the use of electronic mail. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009). The Act, on the other hand, does not regulate methods of communication but regulates the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. 740 ILCS 14/5(g) (West 2018). Therefore, we find that regulating telephone calls, faxes, and e-mails is fundamentally different from regulating the collection, use, storage, and retention of biometric identifiers and information (fingerprints, retina or iris scans, voiceprints, or scans of hand or face geometry).

¶ 56     Because the violation of statutes exclusion does not list the Act, we must determine whether the "other than" language in the exclusion (1) only applies to statutes like the TCPA (telephone calls and faxes) and the CAN-SPAM Act (e-mails) that regulate methods of communication, as advanced by Krishna and Sekura, or (2) if the violation of statutes exclusion applies to statutes like the Act that regulate the collection, use, storage, and retention of biometric identifiers and information, as advanced by West Bend.

¶ 57     The doctrine of *ejusdem generis* relied upon by Krishna and Sekura is a cardinal rule of statutory and contract construction. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009). Black's Law Dictionary states the *ejusdem generis* rule is that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are *** to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black's Law Dictionary 517 (6th ed. 1990).

¶ 58     We begin our analysis with the fact the exclusion is titled "Violation of Statutes that Govern E-Mails, Fax, Phone Calls *or Other Methods* of Sending Material or Information." (Emphasis added.) We note that all the items listed in the title are methods of communication. Next, the specific words used in the exclusion are two statutes that regulate methods of communication: the TCPA (telephone calls and faxes) and the CAN-SPAM Act (e-mails). Here, the general words "other than" follow the enumeration of words with a specific meaning, the TCPA and the CAN-SPAM Act. Applying the doctrine of *ejusdem generis*, we construe the "other than" language to mean other statutes of the same general kind that regulate methods of

communication like the TCPA and the CAN-SPAM Act. Therefore, since the Act is not a statute of the same kind as the TCPA and the CAN-SPAM Act and since the Act does not regulate methods of communication, the violation of statutes exclusion does not apply to the Act.

¶ 59    Moreover, to the extent that the "other than" language in West Bend's policies may be viewed as ambiguous, it must be construed in favor of finding coverage for the insured. See *Elmore*, 2020 IL 125441, ¶ 21. Therefore, under the doctrine of *ejusdem generis* and our rules of insurance contract construction, we construe the violation of statutes exclusion to apply only to statutes like the TCPA and the CAN-SPAM Act, which regulate methods of communication like telephone calls, faxes, and e-mails. We also hold that the violation of statutes exclusion in West Bend's policies does not bar West Bend from providing coverage to Krishna for Sekura's complaint. Accordingly, we hold that West Bend has a duty to defend Krishna against Sekura's lawsuit.

¶ 60    Next, because we have found that West Bend has a duty to defend Krishna in this case and that the violation of statutes exclusion does not bar West Bend from defending Krishna, there is no need to determine whether the data compromise endorsement applies. Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions. *Peach v. McGovern*, 2019 IL 123156, ¶ 64. Moreover, courts in Illinois will not consider issues where the result will not be affected regardless of how those issues are decided. *Id.*; *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Therefore, we will not address the remaining issue.

¶ 61                                III. CONCLUSION

¶ 62    In conclusion, we find that the allegations in Sekura's complaint fall within or potentially within West Bend's polices' coverage because the underlying complaint alleges that Sekura suffered a nonbodily personal injury or advertising injury (emotional upset, mental anguish, and mental injury); Krishna's alleged sharing of Sekura's biometric identifiers and biometric information with SunLync constitutes a "publication" within the purview of West Bend's policies; and Krishna's alleged sharing of Sekura's biometric identifiers and biometric information (fingerprints) with SunLync potentially violated Sekura's right to privacy. Finally, we find that

the violation of statutes exclusion in West Bend's policies does not apply to the Act. Accordingly, we hold West Bend has a duty to defend Krishna in Sekura's lawsuit. We affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 63    Affirmed.

¶ 64    Cause remanded.