2024 IL App (1st) 232311-U

FIRST DIVISION
December 2, 2024

No. 1-23-2311

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) ) | Cook County, Chancery Division. |
| v. | ) ) | No. 2022 CH 06845 |
| WEXFORD HOME CORPORATION, | ) ) | Honorable |
| Defendant-Appellee. | ) ) ) | Celia G. Gamrath, Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**O R D E R**

¶ 1   *Held*:   The circuit court erred in granting judgment on the pleadings in favor of the insured. The insurers had no duty to defend the insured against a class action lawsuit alleging violations of the Illinois Biometric Information Privacy Act (740 ILCS 14/1 *et seq*. (West 2020)) because the Recording and Distribution exclusion in their policies barred coverage of such claims.

¶ 2   This declaratory judgment action arises from an insurance coverage dispute between the

plaintiffs, Ohio Security Insurance Company (Ohio Security) and the Ohio Casualty Insurance Company (Ohio Casualty), and the defendant Wexford Home Corporation (Wexford), regarding the plaintiffs' duty to defend and indemnify Wexford in an underlying class action lawsuit brought pursuant to the Illinois Biometric Information Privacy Act (BIPA) (740 ILCS 14/1 *et seq.* (West 2020)). After the parties filed cross-motions for judgment on the pleadings (735 ILCS 5/2-615(e) (West 2020)), the circuit court granted judgment in favor of Wexford, finding that the plaintiffs owed a duty to Wexford to defend it in the underlying class action lawsuit. The plaintiffs now appeal, contending that three exclusions from their insurance policies to Wexford bar any coverage for the BIPA class action claims. For the following reasons, we reverse and remand.

¶ 3                                I. BACKGROUND

¶ 4      The record before us reveals the following relevant facts and procedural history. In February 2022, Manuel Marin (Marin), individually and on behalf of a putative class of Wexford's current and former employees, filed a class action lawsuit against Wexford (No. 2022 CH 01582) alleging that Wexford's biometric employee time-keeping policy violated BIPA (740 ILCS 14/18(a)-(h) (West 2020)). According to the class action complaint, Wexford required its employees to clock in and clock out by scanning their fingerprints into a fingerprint-scanning machine, and then used that collected biometric information to confirm its employees' presence at work. The complaint alleged that Wexford violated BIPA by collecting, recording, storing, sharing and discussing its employees' biometric information without: (1) providing them with any written notice; (2) obtaining their consent; and/or (3) implementing any of the requisite guidelines on destroying, retaining, sharing, disclosing, and/or disseminating such data to third parties (740 ILCS 14/18(a)-(h) (West 2020)). The complaint therefore sought statutory damages and injunctive relief.

¶ 5      At all relevant times to the class action lawsuit, Wexford was insured by the plaintiffs. The

primary insurer, Ohio Security, issued consecutive commercial general liability policies (Nos. BZS (21) 57 55 23 38 and BZS (22) 63 25 54 15) to Wexford for the policy periods between September 22, 2020, and May 14, 2022 (the primary policy). The umbrella insurer, Ohio Casualty, issued an umbrella liability policy (No. USO (22) 63 25 54 15) to Wexford (the umbrella policy) for the policy period spanning between May 14, 2021, and May 14, 2022.

¶ 6    Relevant to this appeal, Ohio Security's primary policy details Wexford's business liability coverage in the following manner. Ohio Security "will pay those sums that [Wexford] becomes legally obligated to pay because of *** 'personal and advertising injury' to which this insurance applies." Ohio Security "will have the right and duty to defend" Wexford against "any 'suit' seeking those damages," but "will have no duty to defend [Wexford] against any 'suit' seeking damages for *** 'personal and advertising injury' to which this insurance does not apply." According to the primary policy, the insurance applies "[t]o 'personal advertising injury' caused by an offense arising out of [Wexford's] business ***" if, *inter alia*, it occurred during the policy coverage period. The primary policy defines "personal and advertising injury" as injury arising out of, *inter alia*, "oral or written publication, in any manner, of material that violates a person's right to privacy."

¶ 7    Ohio Casualty's umbrella policy provides Wexford with insurance in excess of the "Retained Limit," covered by Ohio Security's primary policy and any other insurance providing coverage to Wexford. According to the umbrella policy, Ohio Casualty will pay on behalf of Wexford "those sums in excess of the 'Retained Limit' that [Wexford] becomes legally obligated to pay *** because of *** 'personal and advertising injury' to which this insurance applies" caused by an "offense" arising out of Wexford's business, but only if the "offense" was committed during the policy period. Just as the primary policy, the umbrella policy defines "personal and advertising

injury" as injury arising out of, *inter alia*, "oral or written publication, in any manner, of material that violates a person's right to privacy."

¶ 8    The umbrella policy also imposes on Ohio Casualty the right and duty to investigate and defend any "claim *** seeking damages covered by the terms and conditions of the policy" but only after Ohio Security's primary policy's insurance has been exhausted, or if damages are sought for an "occurrence" or "offense" covered by the umbrella policy but not covered by Ohio Security's primary policy or any other insurance providing coverage to Wexford.

¶ 9    The umbrella policy's "Personal and Advertising Injury—Following Form" endorsement generally excludes coverage for "personal and advertising injury" except to the extent such coverage is provided by Ohio Security's primary policy, and for "no broader coverage than is provided by such policy."

¶ 10    Both Ohio Security's primary policy and Ohio Casualty's umbrella policy include various insurance exclusions, including, relevant to this appeal: (1) the "Recording and Distribution Of Material Or Information In Violation Of Law" (the Recording and Distribution exclusion); (2) the "Exclusion-Access Or Disclosure Of Confidential Information And Data-Related Liability-With Limited Bodily Injury Exception" (the Access or Disclosure exclusion); and (3) the "Employment-Related Practices Exclusion" (the ERP exclusion).

¶ 11    According to the Recording and Distribution exclusion insurance does not apply to "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

"(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003 [(the CAN-SPAM Act)], including any amendment of

or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act *** or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

¶ 12    Additionally, the Access or Disclosure exclusion provides that insurance does not apply to "personal and advertising injury" arising out of "[a]ny access to or disclosure of any person's or organization's confidential or personal information including [but not limited to[1]] patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."

¶ 13    Finally, the ERP exclusion eliminates coverage for certain employment-related actions. Specifically this exclusion states that insurance does not apply to "personal and advertising injury" to "[a] person arising out of any[]" "[e]employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person ***."

¶ 14    After Wexford tendered Marin's class action lawsuit to the plaintiffs, the plaintiffs denied coverage on the basis of, *inter alia*, the aforementioned three exclusions, and filed a declaratory judgment action seeking that the court declare they had no duty to defend or indemnify Wexford. Wexford filed a counterclaim for declaratory judgment, arguing that the plaintiffs owed it a duty to defend, and for breach of contract arising from their failure to do so.

---

[1] The "but not limited to" language is found only in Ohio Casualty's umbrella policy. It is not included in Ohio Security's primary policy.

¶ 15    The parties filed cross-motions for judgment on the pleadings. On November 7, 2023, the circuit court granted judgment in favor of Wexford and against the plaintiffs, finding that the plaintiffs owed a duty to defend Wexford and that they breached that duty by declining Wexford's tender of defense. In its written order, the circuit court explained that the allegations in the class action lawsuit fell within the policies' definition of "personal and advertising injury," as, among other things, "the publication, in any manner, of material that violates a person's right to privacy," and that they were therefore sufficient to trigger the plaintiffs' duty to defend. The court further analyzed all three of the insurance exclusions relied on by the plaintiffs and held that none of them precluded coverage of the BIPA class action claims.[2] The plaintiffs now appeal contending that the circuit court erred in granting judgment on the pleadings in favor of Wexford and against them.

¶ 16                                    II. ANALYSIS

¶ 17    A motion for judgment on the pleadings is "essentially a motion for summary judgment that is limited to the pleadings." *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 52 (citing *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 227 (2010)); see also 735 ILCS 5/2-615(e) (West 2020). Judgment on the pleadings is proper when the pleadings disclose no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14. Where, as here, the parties file cross-motions for judgment on the pleadings, " 'they agree that only a question of law is involved and invite the court to decide the issues based on the record.' " *Illinois State Bar Association Mutual Insurance Company v. McNabola Law Group, P.C.*, 2019 IL App (1st) 182386, ¶ 12 (quoting *Illinois Emcasco Insurance Co. v. Tufano*, 2016 IL App (1st) 141196, ¶ 17. Our review of the circuit

---

[2] The court further stated that it was making no determination regarding the plaintiffs' duty to indemnify or the damages stemming from the breach of contract claim because these issues would "be determined at a later stage in a separate lawsuit." Lastly, the court noted that its order was "final and immediately appealable and dispose[d] of all ripe matters" in the case.

court's grant of judgment on the pleadings is *de novo*. *Hess*, 2020 IL 124649, ¶ 14.

¶ 18     Here, the sole basis for the underlying judgment is the construction of the plaintiffs' insurance policies with respect to the plaintiffs' duty to defend Wexford in the underlying class action lawsuit. In Illinois, an insurer's duty to defend is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 152 Ill. 2d 90, 125 (1992). To determine whether an insurer has a duty to defend, the reviewing court compares the allegations in the underlying complaint to the relevant provisions in the insurance policy. *McNabola Law Group*, 2019 IL App (1st) 182386, ¶ 13; see also *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 455-56 (2010). If the facts alleged in the underlying complaint fall, or even potentially fall, within the policy's coverage, the insurer must defend the insured in the underlying lawsuit. *Id.*

¶ 19     The interpretation of insurance policies, like any other contract, is a question of law, which we review *de novo*. *Hess*, 2020 IL 124649, ¶ 15. In construing an insurance policy, we strive to give effect to the intention of the parties as evidenced by the policy's language. *Id.* If the language of the policy is clear and unambiguous, we give the words their plain and ordinary meaning. *Pekin*, 237 Ill 2d at 455-56. If the language is susceptible to more than one interpretation, we resolve the ambiguity in favor of the insured. *Id.* at 456. In construing the policy, we also consider the policy as a whole and interpret its language from the standpoint of the insured, bearing in mind the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Id.*; see also *Founders Insurance Co. v. Munoz,* 237 Ill. 2d 424, 433 (2010).

¶ 20     In the present case, the plaintiffs do not dispute that the alleged BIPA claims asserted in the underlying class action lawsuit qualify as "personal or advertising injur[ies]," triggering coverage under their policies. Nor could they, since in *West Bend Mutual Insurance Co. v.*

*Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 4, our supreme court held that disclosing a person's biometric information without his or her consent or knowledge necessarily violates that person's right to privacy, and the plaintiffs' policies here define "personal and advertising injury" as "the publication, in any manner, of material that violates a person's right to privacy."

¶ 21   Instead, on appeal, the plaintiffs solely assert that the following three exclusions in their insurance policies bar coverage of the BIPA claims: (1) the Recording and Distribution exclusion; (2) the Access or Disclosure exclusion; and (3) the ERP exclusion.

¶ 22   Because we find it to be dipositive, we begin by addressing the Recording and Distribution exclusion. As already noted above, this exclusion bars coverage for any "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate: (1) the TCPA; (2) the CAN-SPAM Act; (3) the FCRA, including FACTA; or (4) "[a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act *** or FCRA ***, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

¶ 23   On appeal, the parties dispute the application of the exclusion's fourth catch-all provision to the underlying BIPA claims. The plaintiffs assert that under the plain language of this provision, BIPA violations fall squarely within the excluded injuries. In contrast, Wexford asserts that because the language of the exclusion is ambiguous, we should be guided by our supreme court's holding in *Krishna*, 2021 IL 125978 at ¶¶ 53-60, which rejected the application of a similar, but not identical, exclusion to BIPA claims.

¶ 24   Until recently, no Illinois court had interpreted a Recording and Distribution exclusion identical to the one at issue in this appeal. Instead, only federal courts had addressed such an

exclusion, dividing on whether it precluded coverage under existing Illinois law. *Compare Citizen Ins. Co. of America v. Thermoflex Waukegan, L.L.C.*, 588 F. Supp. 3d 845, 853 (N. D. Ill. 2022) (relying on *Krishna* to find that the exclusionary language was ambiguous and must be construed in favor of coverage of BIPA claims), *with Con't W. Ins. Co. v. Cheese Merchs. of America, L.L.C.*, 631 F. Supp. 3d 503, 514-15 (N.D. Ill. 2022) (finding that the exclusionary language was different from *Krishna* and therefore precluded coverage), *abrogated by Citizens' Insurance Co. of America v. Wynndalco Enterprises, L.L.C.*, 70 F.4th 987, 997 (7th Cir. 2023) (holding that a nearly identical exclusion did not bar coverage and that the insurer owed a duty to defend). However, after the circuit court entered judgment in favor of Wexford in the instant case, in *National Fire Insurance Co. of Hartford and Continental Insurance Company v. Visual Park Company, Inc*., 2023 IL App (1st) 221160, *leave to appeal denied,* 238 N.E. 3d 303, this appellate court considered an identical Recording and Distribution exclusion and found that it applied to bar coverage of BIPA claims.

¶ 25     Consequently, on appeal, the plaintiffs now argue that based on the holding in *Visual Park,* we must find that the Recording and Distribution exclusion in their policies exempts them from defending Wexford against the BIPA violations alleged in the underlying class action lawsuit. On the other hand, Wexford urges us not to follow *Visual Park*, contending that that decision was wrongly decided and that it cannot be squared with our supreme court's holding in *Krishna*. For the following reasons, we disagree with Wexford and find that under the well-reasoned holding of *Visual Park*, the instant Recording and Distribution exclusion applies to bar coverage of BIPA claims and that the plaintiffs therefore have no duty to defend Wexford in the underlying class action lawsuit.

¶ 26     In *Visual Park*, we considered a Recording and Distribution exclusion identical to the one

we are asked to interpret in this appeal and found that both under the plain language of that exclusion and the application of interpretive canons, BIPA claims were not covered by the insurance. *Visual Park*, 2023 IL App (1st) 221160, ¶ 78.

¶ 27    In coming to this conclusion, we first looked at our supreme court's decision in *Krishna* for guidance. *Visual Park*, 2023 IL App (1st) 221160, ¶ 47. In that case, the relevant exclusion, titled "Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information," provided that coverage does not include "personal" or "advertising injury" arising directly or indirectly out of any action or omission that violates or alleges to violate: (1) the TCPA; (2) the CAN-SPAM Act; and (3) "any statute, ordinance or regulation, other than the TCPA or the CAN-SPAM Act ***, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." *Krishna*, 2021 IL 125978, ¶ 9.

¶ 28    Just as in *Visual Park*, in *Krishna*, our supreme court was asked to determine whether BIPA violations fell within the general catch-all language of that exclusion. *Visual Park*, 2023 IL App (1st) 221160, ¶ 48 (citing *Krishna*, 2021 IL 125978, ¶ 9)). Applying the interpretive canon of *ejusdem generis*, under which " 'where general words follow an enumeration of *** things, by words of a particular and specific meaning, such general words are *** to be held as applying only to *** things of the same general kind or class as those specifically mentioned,' " our supreme court found that they did not. *Krishna*, 2021 IL 125978, ¶ 57 (quoting Black's Law Dictionary 517 (6th ed. 1990)).

¶ 29    In doing so, our supreme court noted that all the items listed in the title of the exclusion were "methods of communication." *Krishna*, 2021 IL 125978, ¶ 57. Likewise, the court found that the two statutes explicitly listed in the exclusion were statutes that regulate methods of

communication (*i.e.*, the TCPA regulates the sending of unsolicited telephone calls and faxes, while the CAN-SPAM Act governs unsolicited emails). *Id*. ¶ 58. Accordingly, our supreme court held that under the doctrine of *ejusdem generis*, the general catch-all provision applied only to other statues that regulate modes of communication. *Id*.

¶ 30    Since BIPA does "not regulate methods of communication" but rather "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information," our supreme court in *Krishna* concluded that BIPA was not "the same kind" of statute as the TCPA and the CAN-SPAM Act, and therefore did not fall within the catch-all provision of the exclusion. *Id*.

¶ 31    Moreover, the court noted that "to the extent that the 'other than' language" in the insurance policy "may be viewed as ambiguous, it must be construed in favor of finding coverage for the insured." *Id*. ¶ 59. Accordingly, in *Krishna*, our supreme court concluded that under the doctrine of *ejusdem generis* and rules of insurance contract construction, the exclusion did not bar coverage for BIPA claims and the insurer had a duty to defend. *Id*.

¶ 32    In *Visual Park* this appellate court acknowledged the holding of *Krishna*, but noted that the plain language of the catch-all provision in its Recording and Distribution exclusion was "materially different" and "broader" than the one in *Krishna* because it used verbs such as " 'disposal, collecting, [and] recording.' " *Visual Park*, 2023 IL App (1st) 221160, ¶¶ 54, 57. We next found that this broader language was clear and unambiguous and that when read in isolation, "it [was] simply impossible to deny" that it described BIPA. *Id*. ¶ 55; see also *Wynndalco*, 70 F.4th at 997 ("[t]here is no dispute that a literal, plain-text reading of the catch-all provision would include [BIPA] violations."). As we reasoned, BIPA "regulates the collection, dissemination, and disposal of one's biometric identifiers and information" *Id*. ¶ 55 (citing

*Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 20 and 740 ILCS

14/15(b), (d) (West 2014)). Correspondingly, the catch-all provision before it excluded violations

of statutes that address, prohibit, or limit "the printing, dissemination, disposal, collecting,

recording, sending, transmitting, communicating or distribution of material or information."

*Visual Park*, 2023 IL App (1st) 221160, ¶ 55.

¶ 33    Given this plain and unambiguous language, in *Visual Park* this appellate court stated

that it could end its analysis there and conclude that the Recording and Distribution exclusion

barred coverage for BIPA claims. *Id.* ¶ 57. Nonetheless, following our supreme court's lead in

*Krishna*, we continued our analysis by looking to canons of construction to further interpret the

catch-all provision before us. *Id.*

¶ 34    Just as our supreme court had done in *Krishna*, in *Visual Park*, we invoked the doctrine

of *ejusdem generis*. *Id.* ¶ 58. We then found that the title of our exclusion ("Recording and

Distribution of Material or Information in Violation of Law") differed from the title in *Krishna*

and was "not limited to modes of communication" because of the word "Recording," which has

various dictionary definitions including:

>  " 'Recording' is the gerund of the verb 'record,' which has many meanings but which,
>
>  relevant here, the dictionaries define as 'to cause (sound, visual images, data, etc.) to be
>
>  registered on something (such as a disc or magnetic tape) in reproducible form.' Another
>
>  defines it as 'to put or set down in writing or some other permanent form.' Another: 'to
>
>  set down in writing or the like, as for the purpose of preserving evidence.' Finally: 'to
>
>  keep information for the future, by writing it down or storing it on a computer,' or 'to
>
>  store sounds or moving pictures using electronic equipment so that they can be heard or
>
>  seen later.' Indeed, even the noun form of "'record,' when used in this context, means

'[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form.' " (Citations omitted.) *Id.* *Id.* ¶¶ 60-61.

¶ 35 Next, we found that the statutes listed in our exclusion were more numerous than those listed in *Krishna* and included not only the TCPA and CAN-SPAM Act, but also the FCRA and FACTA, which made it impossible to limit the exclusion to statutes regarding methods of communication. *Id.* ¶¶ 62-64 (citing *Wynndalco*, 70 F.4th at 1002). As we explained, the FCRA and FACTA, among other things, " 'protect consumer privacy' by 'regulat[ing] the consumer reporting agencies that compile and disseminate personal information about consumers.' " *Id.* ¶ 63 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021)).

¶ 36 In *Visual Park*, this appellate court also explained that unlike in *Krishna*, the "four statutes" listed in its exclusion " 'encompass two distinct types of privacy: seclusion and secrecy.' " *Id.* ¶ 68 (quoting *Wynndalco*, 70 F.4th at 1002). While "[t]he TCPA and [the] CAN-SPAM Act address seclusion, [or] 'the right to be left alone' *** the FCRA and FACTA concern secrecy, [or] 'the right to maintain the confidentiality of one's personal information.' " *Id*. Accordingly, we concluded that when viewed together with the exclusion's title, the reference to these four statutes admitted "a privacy gloss." *Id.* ¶ 73. As we explained:

"[T]aken together with the title's reference to '[R]ecording ... of ... [I]nformation,' and with the four statutes that address personal privacy in their different ways, we do not find it unreasonable at all to read into this exclusion the gloss of statutes that protect personal privacy." *Id*.

¶ 37 In coming to this conclusion in *Visual Park*, this appellate court recognized that in employing the canon of *ejusdem generis* it was required to interpret the policy from the

13

standpoint of the insured. *Id.* ¶ 70. We nonetheless found that it was not "particularly nuanced" for a "reasonable person" purchasing this business policy "to note that the TCPA and CAN-SPAM Act deal with a consumer's freedom from unwanted solicitation, while the FCRA and FACTA protect a consumer's confidentially in his or her financial freedom." *Id*. Nor was "it especially sophisticated for an insured purchasing this business liability insurance to understand that these groups of statutes touch on various aspects of an individual's personal privacy, though not precisely in the same way." *Id*.

¶ 38    Thus, in *Visual Park* this appellate court concluded that under either the plain language of the catch-all provision or by applying the canon of *ejusdem generis*, BIPA violations were the types of injuries covered by the catch-all provision in the Recording and Distribution exclusion. *Id.* ¶ 78. Accordingly, we held that the exclusion applied to bar coverage of BIPA claims, and that the insurer had no duty to defend. *Id.* ¶ 120.

¶ 39    We agree with the holding of *Visual Park* and see no reason to depart from its thorough and well-reasoned analysis. The Recording and Distribution exclusions in the primary and umbrella policies before us contain identical language to that discussed in *Visual Park*. Accordingly, applying *Visual Park* to the instant case, we hold that under either the plain language of the catch-all provision in the Recording and Distribution exclusions or the application of the canon of *ejusdem generis*, the BIPA violations alleged in the underlying class action lawsuit are omitted from coverage under the plaintiffs' policies. Accordingly, contrary to the circuit court's ruling, the plaintiffs had no duty to defend Wexford in the underlying class action lawsuit.

¶ 40    Since we find that the Recording and Distribution exclusions apply to bar coverage of BIPA claims, we need not consider the application of the remaining two exclusions argued by

the plaintiffs in this appeal.

¶ 41                                  III. CONCLUSION

¶ 42    For these reasons, we reverse the circuit court's order granting judgment on the pleadings

in favor of Wexford and against the plaintiffs, and remand for further proceedings.

¶ 43    Reversed and remanded.